## IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
## STATE OF MISSOURI

| | | |
|---|---|---|
| **CHARLOTTE FONDREN,** | ) | |
| | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **CIVIL ACTION** |
| **WALMART, INC.,** | ) | **FILE NO.** |
| | ) | **23SL-CC03510** |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

### AMENDED PETITION FOR DAMAGES

      **COMES NOW,** *CHARLOTTE FONDREN* (hereinafter "Petitioner") and files this *AMENDED PETITION FOR DAMAGES* against *WALMART, INC.* (hereinafter the "Respondent") and shows this Honorable Court the following:

**1.**

      Respondent Walmart, Inc. is a corporation whose headquarters are located at 702 S.W. 8th St. Bentonville, Arkansas, AK 72716. Respondent may be served a copy of the Amended Petition for Damages at their registered agent CT CORPORATION SYSTEM located at 120 S Central Ave, Clayton, MO 63105. Respondent is subject to the jurisdiction of this Court, and venue is proper in this Court as the tortious activity occurred in this jurisdiction.

**2.**

      Petitioner intends to prove that she has been personally harmed by the actions of Respondent. Respondent engaged in numerous acts of harassment and discrimination because of Petitioners race, religion, and retaliation as described in the Charge Form and herein.

**3.**

      As shown from the facts contained herein, Respondent is guilty of the intentional acts alleged thus resulting in injury to the Petitioner. Respondent is therefore liable to Petitioner for the damages directly caused by their actions.

### STATEMENT OF FACTS

**4.**

      Petitioner was an employee of Walmart, Incorporated located at 11900 St Charles Rock Rd, Bridgeton, MO 63044, known as the Bridgeton location, from June 29, 2021 to present.

**5.**

In or about January, Petitioner began to be harassed by management.

**6.**

Petitioner was provided with a small birthday reception, which was common for the store. Gyra Stewart, Store Lead, stated, "Why the hell are we having a birthday party for God damn Charlotte?" She then proceeded to take pictures and videos of the party and engaging in rude and disruptive behaviors.

**7.**

Petitioner was also surveilled, without cause, by Clayton Lohman. This incident was reported to management, but no formal action was taken.

**8.**

Petitioner worked the same shift of five in the morning to two in the afternoon with Sunday and Monday off since her hiring on June 29, 2021.

**9.**

Petitioner agreed to accept a new position with the understanding that her shift would not change due to religious reasons and having other employment.

**10.**

Petitioner contends that no Team Leads operate on a rotating shift. The leads work schedules that work for them and any points assessed for non-compliance with the schedule will be removed by Gyra or Matt.

**11.**

The discrepancy between the schedule and their actual time sheets further supports this contention. For example, Team Leads Sherron, Michelle, Shantelle, Fran and Corey do not close the store in accordance with their schedule.

**12.**

Despite the agreed upon schedule in place, Petitioner was notified of a shift change on March 2. Human Resources and Management claimed that the schedule changes automatically after four weeks.

**13.**

Human Resources stated that a rotating shift was required despite the availability of Petitioner's prior schedule being a condition of her acceptance. The prior Front-End Manager, Mary Daniels, a white female was permitted to work a set schedule.

**14.**

On March 3, Store Lead, Gyra Stewart, stated that five in the morning to two in the afternoon was not a shift, even though she had been working that shift since she became employed. Ms. Stewart then asked Petitioner, "who told you it was a shift?" When Petitioner stated that her direct supervisor Manager Ashley Wiggins told her that it was an available shift,

she replied with, "she is a damn liar!"

**15.**

Petitioner informed Human Resources and Manager Matt Altom that she could only work the set shift she agreed to when she accepted the position. Mr. Altom asked her not to quit and stated that he would get her back on her shift.

**16.**

Mr. Altom then refused to let Petitioner off from work to attend the required training at the Academy for her new position. He stated that he would cancel the class but did not and she was reported as a no show for the training. All follow up emails were ignored regarding this matter.

**17.**

Gyra Stewart was opposed to Petitioner being promoted to Front End Manager or the Human Resources department because of her race and/or religion. She stated that Petitioner "would never get there!" She also stated that Petitioner did not answer her test questions well and was openly opposed to the promotion. Yet, Gyra Stewart could offer no examples of questions she took issue with at the time.

**18.**

Gyra Stewart began to ignore Petitioners calls for help over the walkie/intercom systems. She then began to be aggressive and rude over the walkie/intercom systems exposing her to ridicule in front of the entire store. She overturned several management decisions of Petitioner to undermine her position of authority.

**19.**

Gyra Stewart began to ignore her response to Code Sparks. Gyra, along with Arlind, began to remove her office chair and leave it in the management office, which she could not retrieve without a key and was forced to stand while working, despite knowing of her health concerns.

**20.**

On March 22, Petitioner reported that someone had stolen her pen, which was a gift from her late father who passed in 2022. She requested that someone run the surveillance video and received no response.

**21.**

Management began to take cashiers off of the schedule to interfere with her ability to run the Money Center and Customer Service Center.

**22.**

Management began to give Petitioner points randomly and discriminatorily. She received points for not rotating her schedule, despite being told by Management that it would be resolved/removed. Gyra Stewart stated that Petitioner had accumulated so many points due to being late to work. However, she was never late for work. Also, other employees were late, and Ms. Stewart removed their points.

**23.**

Five points is grounds for termination, as of April 7, 2023, Petitioner had 14 points despite Management stating that the points for the rotating schedule would be removed.

**24.**

Petitioner was informed by a visiting manager, Chelsea Stygar, that she would not be allowed to keep her set schedule or days off per Matt Altom, in contradiction to his previous assertions.

**25.**

Petitioner requested a meeting to discuss the harassment and issues with management with Steve Bussman, the Regional Manager. They discussed the matter briefly on the sales floor after he witnessed Matt Altom yelling at and pointing in Petitioner's face on the sales floor in front of staff and customers for a delay in opening the front doors due to being short staffed, but did not provide an opportunity for a meeting.

**26.**

On March 30, Petitioner received a coaching from Arlind Kolimja. She was forced to clean the front of store despite this being a job for maintenance. She was told to clean behind the freezers, registers, under the aisles, and self-checkouts. She was then reprimanded for not doing a complete cleaning job because she missed some trash underneath some shelving.

**27.**

Petitioner was then written up for not printing labels on items sent to the back of the store. She contended that her printer had no battery and that her request for a battery was ignored. The tasks was completed, just delayed. She received points and a coaching for this incident.

**28.**

Petitioner sent various emails regarding errors by Chris Mason, the Front-End Team Lead. He failed to deposit over $51,000.00; is late every day; and has had several money shortages. Arlind Kolimja has allowed deposits to remain in the open instead of the vault and forced delays in Brinks pickups. Despite this, neither party has been terminated nor received a coaching or assessed any points for these infractions.

**29.**

Petitioner was told that she had ninety-days to apply for insurance. She was then denied and told that she only had sixty days to apply. She was told to file an appeal, but that was denied as well. Instead of being provided insurance within three months, it took six months due to misinformation provided by management.

**30.**

Petitioner passed out at work and was rushed to the hospital for a blood transfusion and treatment. Human Resources, via Jasmyne, stated that the bill would be paid if she did not submit a claim to Worker's Compensation. To date, the bill has not been paid. Sean Henderson advised to send back to insurance company with no resolution.

**31.**

Human Resources stated that they would not be providing raises to the store. Despite that announcement, Gyra Stewart provided raises to particular employees. Some employees received one dollar and some received sixty cents. No one from Front End received a raise until Petitioner questioned management. Petitioner only received sixty cents, despite being a member of management, three weeks after raising concerns.

**32.**

Petitioner was not accurately paid for several months. She should have received more than a cashier as a Money Center employee. Yet, she did not. Sean Henderson stated that she would be paid back for the difference. To date, she has not been paid properly.

**33.**

Petitioner was forced to work with disgruntled employees. Barbara would not take any direction from her and proceeded to scream at her during two separate incidents. A manager, Angie Williams, stated that she could not address the issues because Gyra Stewart took over the matter. At one point, Barbara called the Petitioner a "bitch". When Petitioner asked for Barbara to be terminated Angie stated, "for what reason, that is not a reason to terminate! Haven't you called someone a bitch before?" This was clearly insubordination.

**34.**

Petitioner has made several attempts to resolve these issues via management, human resources and Open Door with no resolution.

## COUNT I- HARASSMENT

**35.**

Petitioner hereby incorporates by reference the above paragraphs of her Complaint as if the same were fully set forth at length herein.

**36.**

Respondent has violated the Missouri Human Rights Act by harassing Petitioner based on her race and religion and failing to address harassment and discrimination complaints thereby creating a hostile working environment.

**37.**

It is unlawful to discriminate against any employee or applicant for employment because of her race or religion in regard to hiring, termination, promotion, compensation, job training, or any other term, condition, or privilege of employment.

**38.**

"A person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress…"

**39.**

Petitioner was subjected to acts of contempt and disregard by management and human resources. Her attempts to seek a remedy through management, human resources and Open Door remained fruitless.

**40.**

The rude comments, yelling, forced cleaning, discrimination in providing schedules pay and points created a hostile working environment that began to cause Petitioner stress and anxiety regarding her ability to continue to grow within the company.

**41.**

Respondent is liable to Petitioner for all damages resulting from the failure to address the actions of their employees.

**WHEREFORE,** Petitioner prays for judgment on Count I of her Complaint against Respondent in an amount that is fair and reasonable, for costs, attorney's fees and for any other relief the Court deems proper.

## COUNT II- HOSTILE WORK ENVIRONMENT

**42.**

Petitioner hereby incorporates by reference the above paragraphs of her Complaint as if the same were fully set forth at length herein.

**43.**

"To prevail on a claim for hostile work environment, a plaintiff must prove: (1) she is a member of a protected group; (2) she was subjected to unwelcome [protected group] harassment; (3) her [membership in a protected group] was a contributing factor in the harassment; (4) a term, condition, or privilege of her employment was affected by the harassment; and (5) the [employer] knew or should have known of the harassment and failed to take appropriate action. *See Barekman v. City of Republic, 232 S.W.3d 675, 679 (Mo. App. S.D.2007).*

**44.**

Discriminatory harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive enough to alter the conditions of a Plaintiffs employment and create an abusive working environment. *See Cooper v. Albacore Holdings, Inc., 204 S.W.3d 238, 244 (Mo.App. E.D.2006).*

**45.**

The conduct must be sufficient to create a hostile work environment, both as it was subjectively viewed by the plaintiff and as it would be objectively viewed by a reasonable person. Id. at 245." *Alhalabi v. Mo. Dept. of Natural Resources, 300 S.W.3d 518 (Mo. App., 2009)*

**46.**

Petitioner, is a black woman who is an active Baptist and a ministers daughter. Therefore, she is a member of a protected group by nature of her race and religion. She was subjected to degrading comments, arbitrary punishments, discrimination in pay and insurance, denied Sundays off for church and various other forms of harassment. Respondent was made aware of the harassment, through Coach Ashley Wiggins and Store Manager Matt Altom, yet Respondent failed to take appropriate action.

**47.**

The discrimination and harassment experienced by Petitioner affected her employment in a severe and pervasive manner in that she was constructively terminated without cause due to her race and religion.

**48.**

Petitioner and any other reasonable person would view the acts by Respondent as sufficient to create a hostile work environment.

**49.**

Petitioner is damaged by the actions of Respondent by being forced to work in a hostile work environment and eventually being constructively terminated. Respondent is thereby liable.

**WHEREFORE**, Petitioner prays for judgment on Count II of her Complaint against Respondent in an amount that is fair and reasonable, for costs, attorney's fees and for any other relief the Court deems proper.

## COUNT III- DISCRIMINATION

**50.**

Petitioner hereby incorporates by reference the above paragraphs of her Complaint as if the same were fully set forth at length herein.

**51.**

R.S.M.O. 213.055. 1. It shall be an unlawful employment practice: (1) For an employer, because of the race, color, religion, national origin, sex, ancestry, age or disability of any individual: (a) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability...

**52.**

Respondent arbitrarily provided punishments, coaching's, schedules, differences in pay and insurance. Respondent constructively terminated Petitioner because of her race and religion.

**53.**

Respondent does provide the schedule requested by Petitioner to other employees; failed to properly and fairly give raises and insurance; failed to provide a safe work environment; consistently created punishments and reprimands for Petitioner discriminately based on her race and religion.

**54.**

Additionally, Respondent failed to address these numerous concerns when reported to management, human resources and Open Door. All concerns expressed herein were communicated and confirmed by her former manager, Ashley Wiggins, to Respondent. Ms. Wiggins was then terminated.

**55.**

Respondent is liable to Petitioner for all damages resulting from discrimination resulting from the wrongful constructive termination and actions leading up to the termination of Petitioner.

**WHEREFORE**, Petitioner prays for judgment on Count III of her Complaint against Respondent in an amount that is fair and reasonable, for costs, attorney's fees and for any other relief the Court deems proper.

## COUNT IV- CONSTRUCTIVE DISCHARGE

**56.**

Petitioner hereby incorporates by reference the above paragraphs of her Complaint as if the same were fully set forth at length herein.

**57.**

An at-will employee may not be constructively terminated for filing a claim of discrimination based on the public policy exception.

A discharge is "wrongful" because it is based on the employer's attempt to condition employment on the violation of public policy expressed in applicable constitutional, statutory or regulatory provisions. See Smith v. Bates Technical College, 139 Wash.2d 793, 991 P.2d 1135, 1141 (2000) (citing Tameny v. Atlantic Richfield Co., 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330, 1335 (1980)). Keveney v. Missouri Military Acad., 304 SW 3d 98 (Mo., 2010)

**58.**

Petitioner is a member of a protected classes of race and religion. She has experienced discrimination and was constructively terminated due to her membership in those protected classes.

**59.**

Respondent failed to properly investigate and/or address any of the complaints. Respondent failed to honor the schedule and agreed upon terms of employment. Respondent thereby failed to protect Petitioner from discrimination and harassment creating a hostile work environment.

**60.**

Respondent has retaliated against Petitioner by forcing her to clean the store, denying pay raises and insurance, denying schedule choice, and constructively terminating her employment without cause.

**61.**

Petitioner is a member of several protected classes and deserves the protection of those laws. Respondent does not have a legitimate reason for the actions taken against Petitioner following the complaints to management and human resources. The actions created a hostile work environment. As such, the actions amount to retaliation and a wrongful constructive discharge in violation of the Missouri Human Rights Act.

**WHEREFORE**, Petitioner prays for judgment on Count IV of her Complaint against Respondent in an amount that is fair and reasonable, for costs, and for any other relief the Court deems proper.

## COUNT V- RETALIATION

**62.**

Petitioner hereby incorporates by reference the above paragraphs of her Complaint as if the same were fully set forth at length herein.

**63.**

R.S.M.O. 213.070. "It shall be an unlawful discriminatory practice: (2) To retaliate or discriminate in any manner against any other person because such person has opposed any practice prohibited by this chapter or because such person has filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding or hearing conducted pursuant to this chapter…"

**64.**

Respondent constructively terminated Petitioner because of her race and religion and because she filed numerous complaints about the arbitrary coaching and discriminatory treatment received by management.

**65.**

Respondent's actions amount to retaliation which is a violation of the law and against public policy.

**66.**

Petitioner is damaged by the actions of Respondent by losing her source of income resulting in mental and financial anguish. Petitioner was humiliated, embarrassed, developed anxiety, cried numerous times in the store and at home and suffered overall extreme mental anguish. Respondent is therefore liable for said breach.

**WHEREFORE**, Petitioner prays for judgment on Count V of her Complaint against Respondent in an amount that is fair and reasonable, for costs, attorney's fees and for any other relief the Court deems proper.

This 24th day of August 2023.

Respectfully submitted,

*Aryka N. Moore*

ARYKA N. MOORE, ESQ. #66504
Attorney for Petitioner
**WEATHERS LAW LLC**
462 N. Taylor, Suite 105
St. Louis, Missouri 63108
314-690-3472
arykamoore@gmail.com